## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF SOUTH CAROLINA
## CHARLESTON DIVISION

| | | |
|---|---|---|
| NATHANIEL COLLETON, | ) | |
| | ) | No. 2:08-cr-00581-DCN |
| Petitioner, | ) | No. 2:12-cv-03081-DCN |
| | ) | |
| vs. | ) | |
| | ) | **ORDER** |
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Respondent. | ) | |
| _____ | ) | |

This matter is before the court on petitioner Nathaniel Colleton's ("Colleton")

motion to vacate, set aside, or correct his federal sentence pursuant to 28 U.S.C. § 2255.

The government filed a motion to dismiss, or in the alternative, for summary judgment.

For the reasons set forth below, the court denies Colleton's request for relief.

### I.  BACKGROUND

On June 22, 2009, Colleton pleaded guilty to conspiring to distribute heroin in

violation of 21 U.S.C. § 846 and to distribution of heroin resulting in the death or serious

bodily injury of another person in violation of 21 U.S.C. § 841.  While on bond for these

charges, Colleton was arrested again for distributing heroin and charged in a separate

indictment.  On October 13, 2010, he pleaded guilty to distribution of heroin while

released pending sentencing in violation of 21 U.S.C. § 841 and 18 U.S.C. § 3147.

On May 3, 2011, the court sentenced Colleton to 324 months imprisonment and

four years supervised release.  Judgment was entered on May 10, 2012.  Colleton

appealed his sentence on May 17, 2011, and the Fourth Circuit affirmed his sentence on

March 8, 2012.  On October 24, 2012, Colleton filed the current § 2255 Petition alleging

that his attorney, Dale Thomas Cobb, Jr. ("Cobb"), rendered ineffective assistance of

counsel.  The government moved to dismiss or, in the alternative, for summary judgment on May 21, 2013.  Colleton filed a response on July 24, 2013.  On February 1, 2016, Colleton filed a supplemental motion to set aside his sentence.  On February 19, 2016, the court conducted an evidentiary hearing to address the merits of Colleton's petition.[1]  The motion has been fully briefed and is ripe for the court's review.

## II.  STANDARD OF REVIEW

Colleton proceeds under 28 U.S.C. § 2255, which provides in relevant part:

> A prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence.

28 U.S.C. § 2255(a).

The government filed a motion to dismiss, or in the alternative, a motion for summary judgment.  If, on a motion to dismiss, the court considers matters outside of the pleadings, such as a party's supporting memoranda and attachments, the court treats the motion as one for summary judgment.  Fed. R. Civ. P. 12(d).  Summary judgment shall be granted if the movant shows there is no genuine issue of material fact and that it is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a).  "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude

---

[1]    In § 2255 proceedings, "[u]nless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief, the court shall . . . grant a prompt hearing thereon, determine the issues and make findings of fact and conclusions of law with respect thereto."  28 U.S.C. § 2255(b).  An evidentiary hearing in open court is required when a movant presents a colorable Sixth Amendment claim showing disputed facts beyond the record or when a credibility determination is necessary in order to resolve the issue.  United States v. Witherspoon, 231 F.3d 923, 925–27 (4th Cir. 2000); see also Raines v. United States, 423 F.2d 526, 530 (4th Cir. 1970).

the entry of summary judgment." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). "[S]ummary judgment will not lie if the dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Id. At the summary judgment stage, the court must view the evidence in the light most favorable to the non-moving party and draw all justifiable inferences in its favor. Id. at 255. Because, in this case, the court considers matters outside the pleadings, it treats the government's motion as one for summary judgment.

### III.   DISCUSSION

Colleton's petition asserts the following three grounds for relief, all of which allege ineffective assistance of counsel:  (1) Colleton's attorney failed to properly advise him that he could suppress his pre-Miranda statements, failed to advise him regarding plausible defenses, and failed to properly investigate; (2) Colleton's attorney failed to move to suppress the pre-Miranda statements; and (3) Colleton's attorney failed to advise him on alternatives other than pleading guilty.  In his memorandum in support of his petition, Colleton alleges additional incidents of ineffective assistance of counsel on the basis that his counsel failed to:  explain that the government carried the burden proof; give him an opportunity to review the discovery materials; and advise him of the facts uncovered during the underlying investigation.   The court will address these claims below, in a consolidated fashion.

### A.      Ineffective Assistance of Counsel

Colleton contends that his counsel rendered ineffective assistance and that had he received effective assistance, he would not have pleaded guilty.  The Supreme Court in Strickland v. Washington, 466 U.S. 668 (1984), announced a two-part test for

determining whether a convicted person is entitled to relief on the ground that his counsel rendered ineffective assistance. "To establish cause for [a] default based upon ineffective assistance of counsel, [petitioner] must show that [his] attorney['s] performance fell below an objective standard of reasonableness and that [he] suffered prejudice as a result." United States v. Mikalajunas, 186 F.3d 490, 493 (4th Cir. 1999) (citing Strickland, 466 U.S. at 687). Courts must indulge a strong presumption that counsel's conduct falls within the wide range of reasonably professional assistance. Strickland, 466 U.S. at 689–90.

Under the performance prong, a lawyer's performance is deficient when his representation falls "below an objective standard of reasonableness," as measured against "prevailing professional norms." Id. at 688. "[T]he reasonableness of counsel's challenged conduct" is judged "on the facts of the particular case, viewed as of the time of counsel's conduct." Id. at 690. "To guard against hindsight bias and unfair 'second-guess[ing],' a defendant must overcome 'a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance.'" United States v. Baker, 719 F.3d 313, 318 (4th Cir. 2013) (quoting Strickland, 466 U.S. at 689). The order in which the court addresses the performance or prejudice prong is inconsequential, and the court need not address both prongs if the defendant fails to sufficiently show either. Strickland, 466 U.S. at 697.

However, the relevant inquiry regarding prejudice for Colleton's claims is not whether there is sufficient evidence from which a reasonable jury could convict Colleton, but rather whether he would have pleaded guilty had he received effective assistance. Colleton must demonstrate that, but for Cobb's alleged errors, there is a reasonable

probability that he would not have pleaded guilty.  See <u>Rowsey v. United States</u>, 71 F.

Supp. 3d 585, 597 (E.D. Va. 2014) ("The Court applies a slightly modified prejudice

standard when a petitioner alleges ineffective assistance associated with the entry of a

guilty plea, requiring the petitioner to demonstrate that 'there is a reasonable probability

that, but for counsel's errors, he would not have pleaded guilty and would have insisted

on going to trial.'" (quoting <u>Hill v. Lockhart</u>, 474 U.S. 52, 59 (1985))).  "The Supreme

Court has specified, furthermore, that such an individual 'must convince the court' that

such a decision 'would have been rational under the circumstances.'"  <u>United States v.</u>

<u>Fugit</u>, 703 F.3d 248, 260 (4th Cir. 2012) (quoting <u>Padilla</u>, 130 S.Ct. at 1485).  "The

challenger's subjective preferences, therefore, are not dispositive; what matters is

whether proceeding to trial would have been <u>objectively reasonable</u> in light of all of the

facts."  <u>Id.</u> (emphasis added).

     As a practical matter, it is difficult for a petitioner to prove that he would not have

pleaded guilty had he received effective assistance.  Courts addressing the issue usually

analyze the petitioner's own statements and stipulations in pleading guilty, for example

statements and other evidence of guilt.  <u>See, e.g.</u>, <u>Rowsey</u>, 71 F. Supp. 3d at 600

("Petitioner's own sworn statements indicate that, even if counsel had conducted a more

extensive investigation into possible defenses, Petitioner would not have insisted on

going to trial on Count One because he was, 'in fact, guilty' of the offense stated in

Count One and there was a factual basis for such guilt.").

### 1.    Access to Discovery Materials

     Colleton first argues that he received ineffective assistance because Cobb did not

afford him the opportunity to review the government's discovery materials or notify him

of the underlying facts of the investigation and failed to offer "any advice of a plausible defense." Pet'r's Pet. 5, 10. Colleton asserts that Cobb's actions deprived him of a "plausible defense" to his charges. Id. at 10. Specifically, Colleton asserts that the government's discovery materials revealed that the victim's friend and the friend's brother decided to abandon the victim in his vehicle after he had overdosed rather than seek medical attention. Id. at 11. Thus, Colleton argues, other people were actually responsible for the victim's death. Id. He contends that this information would have provided him a defense to the charge to which he pleaded guilty—the distribution of heroin resulting in the death or serious bodily injury of another person in violation of 21 U.S.C. § 841. Id. Colleton's violation of this statute subjected him to a twenty-year minimum sentence. 21 U.S.C. § 841(b)(1)(A) (if it is found that death or serious bodily injury resulted from the use of the heroin during the course of a conspiracy to distribute heroin, the defendant is subjected to a twenty-year minimum sentence).

Contrary to Colleton's assertions, his counsel avers that he and Colleton "met multiple times to discuss and review discovery as it became available." Cobb Aff. ¶ 6. Cobb also testified during the evidentiary hearing that he met with Colleton on numerous occasions, both in jail and at Cobb's office, to go over the discovery material. February 19, 2016 Hr'g Tr. 7:18–8:9. Cobb also testified that he discussed the medical reports, other witnesses, and Colleton's statements to the police with Colleton. Id. Colleton did not dispute this testimony at his hearing.

Further, although he did not testify during the evidentiary hearing, Colleton's responses to certain questions asked at his plea hearings belie his assertion that he was unable to review the government's discovery materials. See United States v. Lemaster,

403 F.3d 216, 221 (4th Cir. 2005) ("[A] defendant's solemn declarations in open court affirming [a plea] agreement . . . carry [such] a strong presumption of verity" that "they present a formidable barrier in any subsequent collateral proceedings." (quoting United States v. White, 366 F.3d 291, 296 (4th Cir. 2004) (internal quotation marks omitted))). Specifically, when asked by the court whether he had "plenty of time to discuss" his case with his lawyer, Colleton responded "yes." Resp't's Br. Ex. B at 4. The court further asked if Colleton "had plenty of time to go over the indictment, plus whatever paperwork the government has given your lawyer, I'm sure there [are] some statements and police reports and maybe some drug reports, and all that. Have you gone over all that?" Id. Ex. B at 7. Colleton also responded "yes" to this question. Id.

Even assuming Colleton's allegations here are true, they still do not establish a claim for ineffective assistance of counsel. Indeed, Colleton's argument rests on a faulty understanding of the charges to which he pleaded guilty. The third party actions to which Colleton refers have no effect on his liability under § 841. The government need only prove "but for" causation in order to establish Colleton's liability for the victim's death or serious bodily injury and therefore subject him to the enhanced mandatory minimum sentence under this statute. United States v. Schnippel, 371 F. App'x 418, 419 (4th Cir. 2010) ("[T]he Government must show that the victim's use of the heroin received from [defendant] was a but for cause of her death" in order to subject defendant to "an enhanced mandatory minimum sentence."). In other words, the government must prove "that the death or injury would not have occurred had the drugs not been ingested."

United States v. Hatfield, 591 F.3d 945, 948 (7th Cir. 2010) (explaining the "but for" causation required under 21 U.S.C. § 841).[2]

Here, the medical records establish that the victim's death was the result of complications from acute opiate toxicity.  Presentence Report ¶ 15.  Cobb testified during the February 29, 2016 hearing that toxicology reports indicated an overdose of heroin and the medical records determined that the cause of death was a heroin overdose.  Feb. 19, 2016 Hr'g Tr. 18:8–23.   Accordingly, even if the referenced third party actions contributed to the victim's death, there is no dispute that the victim suffered a heroin overdose, which, in and of itself, is a serious bodily injury.  The evidence indicates that, at a minimum, but for the victim's ingestion of heroin sold by Colleton, he would not have suffered a serious bodily injury.  See Schnippel, 371 F. App'x at 419; Hatfield, 591 F.3d at 948.  Therefore, even if there were evidence of intervening or contributing causes of which Colleton was not aware prior to pleading guilty, the medical records establish that but for Colleton's actions in selling the drugs, the victim would not have suffered serious bodily injury or would have died of acute opiate toxicity.

Moreover, the Fourth Circuit has held that 21 U.S.C. § 841 "puts drug dealers and users on clear notice that their sentences will be enhanced if people die from using the drugs they distribute."  United States v. Patterson, 38 F.3d 139, 145 (4th Cir. 1994).

---

[2]     On February 1, 2016, Colleton filed a supplement to his § 2255 petition.  In the supplement, Colleton argues that a recent Supreme Court case, Burrage v. United States, 134 S. Ct. 881, 892 (2014), addresses the mandatory minimum provision of the Controlled Substances Act.  In Burrage, the Supreme Court held "that, at least where use of the drug distributed by the defendant is not an independently sufficient cause of the victim's death or serious bodily injury, a defendant cannot be liable under the penalty enhancement provision of 21 U.S.C. § 841(b)(1)(C) unless such use is a but-for cause of the death or injury."  Id.  Colleton argues that he "was not given to understand [sic] that the drugs were the 'but for' cause of the death . . . [I]t cannot be said that he admitted that the drug distributed by his was the 'but for' cause of the death."  ECF No. 123, 4.

Therefore, the fact that Colleton sold the heroin that was the but for cause of the victim's

death or serious bodily injury renders him liable under 21 U.S.C. § 841.  Id. 38 F.3d at

145.  Thus, the third party actions recounted in the government's discovery materials

would not have provided Colleton a "plausible defense" to his charges.   As a result,

Colleton cannot establish that he suffered prejudice as a result of any of Cobb's alleged

failures to offer Colleton a plausible defense, give him an opportunity to review the

discovery material, or investigate the underlying facts.  See Mikalajunas, 186 F.3d at 493;

Strickland, 466 U.S. at 687.

Therefore, the court denies Colleton's request for relief for lack of access to

discovery materials.

### 2.        Explanation of Government's Burden

Campbell also argues that Cobb rendered ineffective assistance by failing to

explain that the government carried the burden of proving all essential elements of the

case.  Pet'r's Pet. 5.  However, the statements made by the court and Colleton during the

plea hearings indicate that Colleton had a general understanding of what the government

would have to prove were the case to go to trial.  Resp't's Br. Ex. B at 9, Ex. C at 8.

Specifically, the court outlined the elements of the offenses charged and then asked

Colleton whether he understood that "the government would have to prove each and

every element of [the] charges beyond a reasonable doubt before a jury could find

[Colleton] guilty," to which Colleton responded, "yes."  Resp't's Br. Ex. B at 9; see also

Resp't's Br. Ex. C at 8.  The court then made a finding that Colleton understood "the

nature of the charges against him and generally what elements the government would

have to prove" if the case went to trial.  Resp't's Br. Ex. B at 9.

In light of these statements, and the fact that "a defendant's solemn declarations in open court affirming [a plea] agreement . . . carry a strong presumption of verity," Colleton cannot establish that he did not understand the government's burden. <u>Lemaster</u>, 403 F.3d at 221 (quoting <u>White</u>, 366 F.3d at 296). Accordingly, even assuming Cobb did not apprise Colleton of the government's burden to prove every element of the offenses charged, Colleton cannot establish that he suffered any prejudice as a result. <u>See</u> <u>Mikalajunas</u>, 186 F.3d at 493; <u>Strickland</u>, 466 U.S. at 687.

Therefore, the court also denies this claim for ineffective assistance of counsel.

### 3. Explanation of Sentencing

Colleton also argues that Cobb rendered ineffective assistance by failing to explain that Colleton would be subject to the same sentence regardless of whether he went to trial or pleaded guilty. Pet'r's Pet. 5. However, the statements made at both the plea hearings and the sentencing hearing indicate that Colleton was aware of the sentencing possibilities. At the plea hearing on October 13, 2010, Colleton responded affirmatively to the court's inquiries as to whether Colleton had talked "generally [with Cobb about] how the sentencing guidelines might be applied in [his] case" and whether Colleton understood that no one would "be able to determine the final guidelines for [his] case until after [his] presentence report [was] completed." Resp't's Br. Ex. C at 9.

Colleton's sentence was further discussed at the sentencing hearing on May 3, 2011. At this hearing, Cobb recounted that Colleton originally was eligible for a three point deduction under the sentencing guidelines due to his acceptance of responsibility for the original charges. Then, while released on bond, Colleton was arrested for selling heroin to a cooperating source. Resp't's Br. Ex. C at 12. Cobb objected to the second

10

presence report's recommendation to eliminate the point deduction due to Colleton's additional arrest.  Id. Ex. D at 2.  The court overruled this objection, finding that "[a]cceptance of responsibility . . . is really not deserved when one goes back out on bond and commits another federal or state crime."  Id. Ex. D at 3–4.  Consequently, because of his continuing heroin dealing while on bond, Colleton received a sentence similar to what he would have received had he been convicted after a trial.

Based on the foregoing, the court finds that Colleton suffered no prejudice by Cobb's alleged failure to apprise him of his sentence possibilities.  See Mikalajunas, 186 F.3d at 493; Strickland, 466 U.S. at 687.

### 4.  Suppression of Incriminating Statements

Finally, Colleton argues that Cobb rendered ineffective assistance by failing to move to suppress incriminating statements Colleton made prior to being read his Miranda Rights.  Pet'r's Pet. 12.  Specifically, Colleton contends that he had not yet been given his Miranda rights when he made "statements to officers regarding his involvement in selling knock out brand heroin to [the victim's friend] around the time of October 22, 2007." Pet'r's. Pet. at 13.  Colleton submitted a sworn affidavit to the court in which he states: "I was read my rights after I had admitted to knowing Paige Kaufmann and selling her drugs a couple of times and I also told the police that I did not know of sell [sic] drugs to the person Known [sic] as Evan Hardison."  Pet'r's Aff. ¶ 7.

Colleton contends that he would not have pleaded guilty had his attorney discussed the possibility of moving to suppress his pre-Miranda statements.  Colleton Aff. ¶ 7 ("Attorney Cobb did not explain to me that my rights had been violated when I offered incriminating statements before being informed that I had a right to remain silent

and have a lawyer present, nor did he explained [sic] to me that he could have suppressed these statements agreements [sic].").  Colleton's affidavit states that he "would have <u>considered</u> a trial not a guilty plea."  Colleton Aff. ¶ 12 (emphasis added).  Cobb also submitted a sworn affidavit in which he states that "subsequent to his arrest[,] [Colleton] was given his Miranda warnings, acknowledged that he understood them, was willing to waive them, and gave a complete account of his drug selling activity dating back to 2006."  Gov't Mot. to Dismiss, Ex. 2, Cobb Aff. ¶ 2.  Cobb further contends that Colleton "never expressed a desire to challenge any of his pre-trial statements, or to elect to go to trial at any time."  Id. ¶ 9.

During the hearing, Cobb testified that Colleton never told him that his statement to the police occurred prior to receiving his Miranda warning.  Feb. 19, 2016 Hr'g Tr. 19:24–20:8; 21:18–20.  Cobb testified that he did not move to suppress Colleton's statements because "we weren't going to trial and because [Colleton] had been Mirandized and he did voluntarily give the statement and we were working on trying to get a downward departure motion, it would have been counterproductive to file a motion to suppress his statements."  Feb. 19, 2016 Hr'g Tr. 8:18–23.  Cobb further testified that he did not think "there was any merit [to a motion to suppress]; . . . and it would not have helped him with the U.S. Attorney and towards, you know, the end of trying to get him a decent deal and a decent sentence.  Hr'g Tr. 9:1–4.

There is absolutely no evidence of the circumstances surrounding Colleton's alleged pre-Miranda statements in the record.  As stated above, Colleton did not testify during the evidentiary hearing.  Therefore, there is no indication of whether Colleton's statements were in fact pre-Miranda statements subject to suppression.  Colleton failed to

12

provide any evidence to determine the likelihood of success of a motion to suppress on the merits. "Counsel is not required to file meritless motions to suppress." Scott v. United States, 2013 WL 4504297, at *4 (E.D.N.C. Aug. 22, 2013) (citing United States v. Gibson, 55 F.3d 173, 179 (5th Cir. 1995)).

Even if Cobb were objectively unreasonable in failing to move to suppress Colleton's pre-Miranda statements, Colleton must still establish that there was a reasonable probability that, but for Cobb's failure to suppress the statement, he would not have pleaded guilty. Colleton must also demonstrate that proceeding to trial would have been objectively reasonable in light of the facts. Colleton cannot establish prejudice under the second prong of Strickland because there was overwhelming lawfully obtained evidence implicating Colleton's criminal liability. For example, Paige Kauffman told officers that Colleton sold her the heroin and that Colleton knew that Paige Kauffman and Even Hardison overdosed, but continued to sell the heroin. Hr'g Tr. 9:9–24. Further, Colleton made incriminating statements after he was given his Miranda rights. Hr'g Tr. 9:23–10:8. In Colleton's post-Miranda statement to the police, he admitted to selling approximately $50,000.00 in heroin between 2004 and 2008. Id. Lastly, an undercover police officer purchased heroin from Colleton directly, and the purchase was captured on audio and video. Hr'g Tr. 10:30–11:7. In light of the overwhelming evidence of Colleton's guilt, it would have been unreasonable for Colleton to insist on going to trial under the circumstances.

Therefore, because Colleton cannot establish prejudice, this claim fails.

**B.    Amendment to the 2255 Petition**

In Colleton's response in opposition to the government's motion to dismiss, he tacks on a Motion to Amend pursuant to 28 U.S.C. § 2242, arguing that the enhancement sentence under 18 U.S.C. § 3147 was imposed in violation of his Sixth Amendment rights.  However, Rule 15(a)(1) states that a party must amend its pleading 21 days after the earliest of:  (1) the plea itself, if a responsive pleading is required; (2) after service of a responsive pleading; or (3) after service of a motion under Rule 12(b), (e), or (f).  Fed. R. Civ. P. 15.  Colleton's amendment is untimely, given that it should have been filed by November 14, 2012 to fit within the 21-day limit.

As an initial matter, Colleton did not receive an <u>enhancement</u> for his primary offenses in the first superseding indictment.  Rather, he was charged in a separate indictment for his conduct while out on bond.  Therefore, Colleton's additional 84 months are a result of his being convicted of a separate heroin-related crime while released on bond and not a sentencing enhancement.  While Colleton lost the potential for a downward departure from the sentence prescribed by the Guidelines, his insistence on selling heroin while released on bond hardly qualifies as "acceptance of responsibility"; therefore, the minimum twenty years is fitting.

Colleton's amendment is based substantively on a violation of his Sixth Amendment right under 18 U.S.C. § 3147.  Colleton cites a Fifth Circuit case, <u>United States v. Massey</u>, 827 F.2d 995 (5th Cir. 1987), in support of his assertion that a person released on bond must be on notice of sentence enhancements if she or he is convicted of another crime on release.  <u>Massey</u> includes no such argument in its decision, and is in any event inapposite because Colleton's sentence is not an enhancement.  Colleton also cites

United States v. DiCaro, 852 F.2d 259 (7th Cir. 1987), in which the Seventh Circuit

vacated an enhancement under § 3147 for failure to notify defendant of that potential

enhancement. However, in the DiCaro case—which cites the Fourth Circuit's United

States v. Cooper, 827 F.2d 991 (4th Cir. 1987), a fact which Colleton does not note—the

Seventh Circuit abided by the rule of lenity, given the ambiguity of § 3142's implied

advisory warnings for enhancements due to violations on release.

Again, Colleton did not receive a sentence enhancement as in the DiCaro case,

and there is little ambiguity in the statutes governing his conduct. The transcript of

Colleton's hearing before this court and his plea of guilty—which this court found

Colleton competent to render—indicates that he clearly understood that he "committed

the offense in paragraph 1 while released pending sentencing." The second superseding

indictment to which Colleton competently pleaded guilty indicates that Colleton

"knowingly, intentionally and unlawfully did possess with intent to distribute and did

distribute a quantity of heroin." ECF 68.

Finally, Colleton cites the Supreme Court's decision in Alleyne v. United States,

133 S. Ct. 2151, 2155 (2013), which asserts, with regard to sentencing, "that any fact that

increases the mandatory minimum" must be alleged in the indictment and proven beyond

reasonable doubt (emphasis added). Colleton is misled in his citation of a case that

discusses an increase in mandatory minimums, having little to do with offenses

committed while released on bond. Furthermore, Colleton's plea of guilty to those

counts with which he was charged removes the burden of proof from the government

and, in some sense, affirms their truth.

Therefore, whether or not Colleton's amendment to the § 2255 Petition is timely, it is substantively without merit.  On this count, Colleton's argument fails.

### IV.   CONCLUSION

For the foregoing reasons, the court **DENIES** petitioner's request for relief under 28 U.S.C. § 2255 and **GRANTS** the government's motion for summary judgment.

**IT IS FURTHER ORDERED** that a certificate of appealability is denied because petitioner has failed to make "a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2).

**AND IT IS SO ORDERED**.

**DAVID C. NORTON**
**UNITED STATES DISTRICT JUDGE**

**March 21, 2016**
**Charleston, South Carolina**

16