**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION**

| | |
|---|---|
| UNITED STATES OF AMERICA,  ) | |
| ) | No. 2:08-cr-581-DCN |
| vs.  ) | No. 2:09-cr-1084-DCN |
| ) | **ORDER** |
| NATHANIEL COLLETON,  ) | |
| ) | |
| Defendant.  ) | |
| _____) | |

This matter is before the court on defendant Nathaniel Colleton's ("Colleton") motions for compassionate release, 2:08-cr-581, ECF No. 131; 2:09-cr-1084, ECF No. 66. For the reasons set forth below, the court denies the motions.

## I.  BACKGROUND

On June 12, 2008, Colleton was charged in a four-count indictment with conspiracy to distribute 100 grams or more of heroin; distribution of heroin resulting in death or serious bodily injury; and two counts of distribution of heroin (the "2008 Indictment"). On June 24, 2008, Colleton was released on bond. On June 22, 2009, Colleton pled guilty to the conspiracy and distribution resulting in death or serious bodily injury counts pursuant to a written plea agreement. At the time of his plea, Colleton was allowed to remain on bond pending sentencing. On September 16, 2009, Colleton was arrested on state charges for distribution of heroin that occurred on August 26, 2009. He was federally indicted for that conduct on October 13, 2009 (the "2009 Indictment"), and his bond from his 2008 Indictment was revoked on October 27, 2009. On October 13, 2010, Colleton pled guilty to the 2009 Indictment.

Prior to sentencing, the United States Probation Office prepared a presentence report ("PSR"), which calculated a total offense level of 41 for all counts and, pursuant to

1

the United States Sentencing Guidelines, recommended a sentence of 324 to 405 months imprisonment. On May 3, 2011, this court sentenced Colleton to 240 months imprisonment—the statutory mandatory minimum—on the 2008 Indictment and 84 months imprisonment on the 2009 Indictment, with the sentences to run consecutively. 2:08-cr-581, ECF Nos. 68, 71; 2:09-cr-1084, ECF Nos. 35, 38. Colleton asserts that he has served approximately 144 months of that sentence.

On June 17, 2020, Colleton filed a motion for compassionate release under 18 U.S.C. § 3582(c)(1)(A) or, alternatively, for release to home confinement in each of his criminal cases, relying on the threat posed by the COVID-19 pandemic. 2:08-cr-581, ECF No. 131; 2:09-cr-1084, ECF No. 66. On August 10, 2020, the government responded in opposition with respect to both. 2:08-cr-581, ECF No. 139; 2:09-cr-1084, ECF No. 71. On August 17, 2020, Colleton filed replies. 2:08-cr-581, ECF No. 140; 2:09-cr-1084, ECF No. 72.

## II.  DISCUSSION

### A.  Compassionate Release

Generally, a court "may not modify a term of imprisonment once it has been imposed." 18 U.S.C. § 3582(c). Section 3582(c)(1)(A) provides an exception to this general rule where "extraordinary and compelling reasons warrant such a reduction." Courts refer to requests under this section as motions for "compassionate release." United States v. Norris, 2020 WL 2110640, at *1 (E.D.N.C. Apr. 30, 2020). Prior to the First Step Act, Pub. L. No. 115-391, 132 Stat. 5194 (2018), the law permitted only the Bureau of Prisons ("BOP") to file motions for compassionate release. United States v. Dowdell, 669 F. App'x 662 (4th Cir. 2016). Section 603 of the First Step Act amended

§ 3582(c)(1)(A)(i), authorizing defendants themselves to file requests for compassionate relief with the sentencing court after exhausting available administrative remedies.[1] United States v. Griggs, 2020 WL 2614867, at *3 (D.S.C. May 22, 2020). Comments to § 1B 1.13 of the United States Sentencing Commission's advisory Guidelines Manual provide four categories of "extraordinary and compelling circumstances" that may warrant a sentence reduction: (1) medical condition of the defendant, (2) age of the defendant, (3) family circumstances, and (4) a catch-all "other reasons". U.S.S.G. § 1B 1.13, comment. n. 1.[2]

      The determination of whether "extraordinary and compelling circumstances" warrant relief is within the discretion of the district court. United States v. Beck, 425 F. Supp. 3d 573, 579 (M.D.N.C. 2019). If the court finds that such circumstances warrant a reduction in a defendant's sentence, it must "consider the factors set forth in § 3553(a)" to determine whether such a reduction is justified. 18 U.S.C. § 3582(c)(1)(A)(i). Further,

---

[1] The government does not argue that Colleton failed to exhaust his administrative remedies. On April 27, 2020, Colleton submitted a request for release to home confinement to the director and regional director of the BOP, as well as the warden at Colleton's prison, FCI Butner Low. 2:09-cr-1084, ECF No. 66-1. Counsel for Colleton followed up on that initial request with a second letter on May 13, 2020. 2:09-cr-1084, ECF No. 66-2. Colleton submits that he has not received any response to his requests other than an acknowledgment of receipt. See 2:09-cr-1084, ECF No. 66-3. Because thirty days have lapsed since Colleton requested relief from the warden of his facility, the court is satisfied that Colleton fully exhausted his administrative remedies. See 18 U.S.C. § 3582(c)(1)(A)(i).

[2] Because "[t]he Sentencing Commission has not amended or updated the old policy statement since the First Step Act was enacted, nor has it adopted a new policy statement applicable to motions filed by defendants," the comments to § 1B 1.13 technically apply to motions filed by the BOP prior to the First Step Act. United States v. Beck, 425 F. Supp. 3d 573, 579 (M.D.N.C. 2019). Therefore, "[w]hile the old policy statement provides helpful guidance, it does not constrain the Court's independent assessment of whether 'extraordinary and compelling reasons' warrant a sentencing reduction under § 3582(c)(1)(A)(i)." Id.

the court must ensure that the defendant is not "a danger to the safety of another person or the community as provided in 18 U.S.C. § 3142(g)." U.S.S.G. § 1B1.13.  A compassionate relief defendant "has the burden of establishing that such relief is warranted." Griggs, 2020 WL 2614867 at *3.

In this case, Colleton has not demonstrated that "extraordinary and compelling reasons" warrant a reduction in his sentence.  Colleton argues that his vulnerability to COVID-19 due to his race justifies his immediate release from prison.  The court disagrees.  As an initial matter, the court notes that "a general fear of contracting COVID-19 . . . does not provide an extraordinary and compelling reason for a defendant's release." United States v. McCoy, 2020 WL 5371463, at *4 (E.D. Va. Sept. 8, 2020) (citing United States v. Raia, 954 F.3d 594, 597 (3d Cir. 2020)).  Moreover, while the Centers for Disease Control ("CDC") recognizes that members of racial and ethnic minority groups face an increased risk of getting sick and facing complications from COVID-19, "these disparities are not based on biological makeup but on other factors." United States v. Avery, 2020 WL 4287593, at *4 (S.D.W. Va. July 23, 2020).  The CDC points to "social determinants of health, such as poverty and healthcare access" that contribute to the health disparities related to COVID-19 in minority communities. Health Equity Considerations and Racial and Ethnic Minority Groups, Centers for Disease Control and Prevention, https://www.cdc.gov/coronavirus/2019-ncov/community/health-equity/race-ethnicity.html (Last updated Jul. 24, 2020).  In other words, "current evidence suggests a correlation, not causation" between race and vulnerability to and risk of complications from COVID-19. United States v. Dimkpa, 2020 WL 4754901, at *2 (M.D.N.C. Aug. 17, 2020).  As such, Colleton's specific

4

underlying conditions more accurately reflect his vulnerability to COVID-19 than his race alone. However, Colleton has not alleged any such underlying conditions, let alone one that might constitute an extraordinary and compelling reason for release well before his sentence has expired.

Additionally, while the court commends Colleton on his impressive achievements while incarcerated and his resolve to become a productive member of society, "rehabilitation of the defendant is not, by itself, an extraordinary and compelling reason" warranting relief. U.S.S.G. § 1B1.13. Therefore, the court finds that Colleton has not demonstrated that extraordinary and compelling reasons justify his release, even in light of the COVID-19 pandemic. See United States v. Thomas, 2020 WL 3895781, at *4 (W.D. Va. July 10, 2020) (denying compassionate release because defendant's hypertension diagnosis and race did not make him more susceptible to contracting COVID-19.); United States v. Wilson, 2020 WL 4286873, at *2 (D. Md. July 27, 2020) ("Without evidence that Wilson himself is particularly vulnerable to COVID-19, the court is not persuaded that Wilson's age and race sufficiently increase his COVID-19 risk as to constitute an extraordinary and compelling reason for a sentence reduction.").

### B. Recommendation to the BOP

Colleton alternatively requests that the court "direct[] [Colleton's] release from federal custody to home confinement to serve the remainder of his sentence." 2:08-cr-581, ECF No. 131 at 6; 2:09-cr-1084, ECF No. 66 at 6. 18 U.S.C. § 3624(c)(2) authorizes the BOP "to place a prisoner in home confinement for the shorter of 10 percent of the term of imprisonment of that prisoner or 6 months." Recognizing the

severity of the COVID-19 pandemic in the United States and the particular risk it imposes upon the incarcerated, Congress recently amended § 3624(c)(2) as part of the Coronavirus Aid, Relief, and Economic Security Act ("CARES Act").  That amendment gives Attorney General Barr the power to "lengthen the maximum amount of time for which the Director [of BOP] is authorized to place a prisoner in home confinement." Pub. L. No. 116-136, § 12003(b)(2), 134 Stat. 236 (March 27, 2020).  Attorney General Barr has directed the BOP to utilize this expanded home confinement authority to protect vulnerable inmates and prevent or control the spread of the virus.  Atty. Gen. William Barr, Increasing Use of Home Confinement at Institutions Most Affected by COVID-19, (Apr. 3, 2020), https://www.justice.gov/file/1266661/download.  Attorney General Barr has strongly urged the BOP to utilize alternative confinement methods and directed the BOP to consider "the totality of circumstances" regarding each inmate, including the "danger posed by the inmate to the community" and "[t]he age and vulnerability of the inmate to COVID-19, in accordance with the [CDC] guidelines," concluding that "inmates with a suitable confinement plan will generally be appropriate candidates for home confinement rather than continued detention at institutions in which COVID-19 is materially affecting their operations." Id.

Even after the amendments promulgated under the CARES Act, the BOP retains the exclusive discretionary authority to release a defendant to home confinement or to transfer him or her to a residential reentry center. See 18 U.S.C. §§ 3621(b), 3624(c)(2); see also Tapia v. United States, 564 U.S. 319, 331 (2011) ("When a court sentences a federal offender, the BOP has plenary control, subject to statutory constraints, over the place of the prisoner's imprisonment[.]").  In determining a prisoner's prerelease

placement, 18 U.S.C. § 3621(b) instructs the BOP to consider the resources of the facility contemplated, the nature and circumstances of the offense, the history and characteristics of the prisoner, any statement made by the court that imposed the sentence, and any pertinent policy statement issued by the Sentencing Commission pursuant to Section 994(a)(2) of Title 28. Accordingly, courts have found authority in § 3621(b) to make recommendations to the BOP regarding prerelease placement. See United States v. Martin, 877 F.3d 1035, 1036 (11th Cir. 2017) (collecting cases); United States v. Perkins, 2020 WL 4783558, at *8–9 (D.N.H. Aug. 18, 2020) (collecting cases); see also United States v. Ferguson, 2018 WL 5095149 (D.S.C. Oct. 19, 2018) ("Accordingly, the court recommends the BOP place Defendant in an RRC or halfway house for the final twelve (12) months of his sentence."). In making such a recommendation, the court should consider the history and characteristics of the defendant as well as the offense committed. See 18 U.S.C. § 3621(b).

This court lacks authority to order home confinement because the authority to make placement decisions is vested solely with the BOP. McCarson v. Reherman, 2020 WL 2110770, at *2 (D.S.C. May 4, 2020) ("The decision of whether to release an inmate to discretionary home confinement rests solely with the [BOP]"). To the extent that the court has the authority to recommend that the BOP place Colleton in home confinement, the court declines to exercise that authority. The court reiterates that Colleton's lack of a disciplinary record while incarcerated and his efforts to better himself by taking courses are commendable. However, the court finds that the BOP is in a better position than the court to evaluate Colleton's placement alternatives. The court is confident that the BOP will give serious and thoughtful consideration to Colleton's placement request and

therefore declines to make a recommendation. The court's decision not to make the requested recommendation should not reflect negatively on Colleton' eligibility for home confinement or other placement or on the conditions of such placement.

## IV.   CONCLUSION

For the foregoing reasons the court **DENIES** the motion.

**AND IT IS SO ORDERED.**

_____
DAVID C. NORTON
UNITED STATES DISTRICT JUDGE

**December 15, 2020**
**Charleston, South Carolina**